IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| W. CHARLES PECK, *et al.*, | |
| Plaintiffs, | |
| v. | Civil No. 22-5762 (RBK/SAK) |
| JAYCO, INC., *et al.*, | **OPINION** |
| Defendants. | |

**KUGLER**, United States District Judge:

This matter comes before the Court upon Defendant Jayco, Inc.'s Motion to Transfer to the United States District Court for the Northern District of Indiana (South Bend Division) ("Motion" or "Mot.") (ECF No. 5). For the reasons set forth below, the Court **GRANTS** Jayco's Motion.

**I.  BACKGROUND**

   **A.  Factual Background**

Plaintiffs W. Charles Peck and Suzanne Nelson are New Jersey citizens. (ECF No. 5-1, Ex. A, "Complaint" or "Compl." ¶ 1). Defendants Jayco, Inc., White Horse RV Center, and Ford Motor Company are corporations that maintain their principal places of business in Middlebury, Indiana, Egg Harbor City, New Jersey, and Detroit, Michigan, respectively. (*Id.* at ¶¶ 2–4).

Plaintiffs allegedly purchased a new 2021 Jayco Emblem 36U recreational vehicle ("RV") on January 28, 2021 in New Jersey. (*Id.* at ¶¶ 5–6). They claim that Jayco is the RV's manufacturer. (*Id.* at ¶ 16). They also claim that White Horse was the dealership that sold the

1

RV. (*Id.* at ¶ 17). Additionally, Jayco claims that Ford is the RV's engine and chassis manufacturer. (Mot. at 8).

Jayco included a Limited Warranty with the RV's purchase. (ECF No. 5-1, Ex. D, the "Warranty"). Section 1 of the Warranty covered:

- The Motorhome when it is used only for its intended purpose of recreational travel and camping;
- Only the first retail purchaser;
- Only those portions of the Motorhome not excluded under the section "What is Not Covered";
- The Motorhome only when sold by an authorized dealership; and
- Only defects in workmanship performed and/or materials used to assemble those portions of the Motorhome not excluded under the section "What is Not Covered"

(*Id.* at 1). The Limited Warranty also provided, in relevant part:

> **LEGAL REMEDIES**: EXCLUSIVE JURISDICTION FOR DECIDING LEGAL DISPUTES RELATING TO AN ALLEGED BREACH OF WARRANTY OR ANY REPRESENTATIONS, OF ANY NATURE, MUST BE FILED IN THE COURTS WITHIN THE STATE OF MANUFACTURE, WHICH IS INDIANA. THIS LIMITED WARRANTY SHALL BE INTERPRETED AND CONSTRUED IN ACCORDANCE WITH AND WITH THE LAWS OF THE STATE OF INDIANA . . . . ALL CLAIMS, CONTROVERSIES, AND CAUSES OF ACTION, ARISING OUT OF OR RELATING TO THIS LIMITED WARRANTY, SHALL BE GOVERNED BY THE LAWS OF THE STATE OF INDIANA . . . .

(*Id.* at 5). Peck signed the Warranty Registration Entry, which states, in part, "I have received, read, and understand the Limited Warranty applicable to this product prior to purchase and I understand the terms thereof and the intended use of the product." (ECF No. 5-1, Ex. E, the "Registration Entry").

Plaintiffs complain that due to ineffective repair attempts made pursuant to the Warranty, Jayco substantially impaired the RV. (Compl. ¶ 11). Plaintiffs maintain that despite their efforts during the warranty period to address various defects and non-conformities, the RV remains substantially impaired in use, value, safety, or a combination of the three. (*See id.* at ¶¶ 12–13).

2

### B. Procedural History

On July 20, 2022, Plaintiffs filed suit against Defendants in the Superior Court of New Jersey, Law Division, Atlantic County asserting four causes of action: violations of (1) the New Jersey Motor Vehicle Warranty Act; (2) the Magnuson Moss Warranty Improvement Act; (3) the Uniform Commercial Code; and (4) the New Jersey Consumer Fraud Act (against White Ford RV Center only). (*See generally* Complaint). Jayco and White Horse, the removing defendants, first received proper service on September 6, 2022 and subsequently removed the Complaint to this Court on September 28, 2022. (ECF No. 1, "Notice of Removal" at 1–2).

Jayco filed this Motion on October 14, 2022. (ECF No. 5). Plaintiffs opposed the Motion on October 26, 2022. (ECF No. 6, "Pl. Opp'n"). Jayco replied to Plaintiffs' Opposition on October 31, 2022. (ECF No. 7, "Def. Reply").

## II.   LEGAL STANDARD

28 U.S.C. § 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." It is well settled that a motion to transfer under § 1404(a) is the appropriate procedural mechanism to enforce a forum-selection clause. *See Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 63 (2013).

When a forum-selection clause exists, "district courts [must] adjust their usual § 1404(a) analysis in three ways." *Id.* Namely, "district courts (1) must give no weight to the forum preferred by 'the party defying the forum-selection clause'; (2) must deem the private interests to 'weigh entirely in favor of the preselected forum' because the parties agreed to the preselected forum and thereby waived the right to challenge it as inconvenient; and (3) must proceed to

3

analyze only public interests." *In re: Howmedica Osteonics Corp.*, 867 F.3d 390, 402 (3d. Cir. 2017) (quoting *Atl. Marine*, 571 U.S. at 581–82).

However, when some, but not all, of the relevant parties have entered a forum-selection clause, the Court must consider additional factors as part of its transfer analysis. This four-step inquiry requires the Court to "consider in sequence: (1) the forum-selection clauses, (2) the private and public interests relevant to non-contracting parties, (3) threshold issues related to severance, and (4) which transfer decision most promotes efficiency while minimizing prejudice to non-contracting parties' private interests." *Id.* at 403–04.

## III. DISCUSSION

Jayco seeks to transfer this matter to the United States District Court for the Northern District of Indiana pursuant to a forum selection clause and *forum non conveniens* in accordance with 28 U.S.C. § 1404(a). (Mot. at 1–2). Jayco argues that the forum-selection clause to which Plaintiffs agreed requires transfer. (*See id.* at 8–9).

Plaintiffs respond that venue is proper in the District of New Jersey, and, thus, this Court should not transfer the case to Indiana. (Pl. Opp'n at 4).[1] Plaintiffs argue that because they seek remedy under the New Jersey Fraud Act and are New Jersey residents, the matter should remain before this Court. (*See id.*).

Because Plaintiffs have failed to present any compelling reasons why the Court should not enforce the forum-selection clause that they willingly entered into with Jayco, and the two non-contracting Defendants (White Horse and Ford) consent to the transfer—and therefore transfer would not prejudice them—this Court grants Jayco's Motion.

---

[1] Because Plaintiffs improperly numbered their opposition brief, we use ECF page numbers when citing to this document.

4

### A. The Forum Selection Clause

In *Atlantic Marine*, the Supreme Court said, "[w]hen parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations. 571 U.S. at 583. In other words, "[i]n all but the most unusual cases, . . . 'the interest of justice' is served by holding parties to their bargain." *Id.* The Third Circuit applied this language to conclude that "claims concerning those parties [who agree to forum-selection clauses] should [typically] be litigated in the fora designated by the clauses." *In re: Howmedica*, 867 F.3d at 404. Accordingly, "forum-selection clauses are presumptively valid" in the Third Circuit. *Cadapult Graphic Sys., Inc. v. Tektronix, Inc.*, 98 F. Supp. 2d 560, 564 (D.N.J. 2000) (quoting *Reynolds Publishers, Inc. v. Graphics Fin. Group, Ltd.*, 938 F. Supp. 256, 263 (D.N.J. 1996)).

A party may challenge a forum-selection clause's presumptive validity by "mak[ing] a 'strong showing' that the clause is 'unreasonable.'" *Id.* (quoting *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 10 (1972)). The party can show unreasonableness only if:

> the party objecting to its enforcement establishes (1) that it is the result of fraud or overreaching, (2) that enforcement would violate a strong public policy of the forum, or (3) that enforcement would in the particular circumstances of the case result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable.

*Id.* (quoting *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 202 (3d. Cir. 1983); *Union Steel Am. Co. v. M/V Sanko Spruce*, 14 F. Supp. 2d 682, 686 (D.N.J. 1998)).

The Jayco Limited Warranty states, in relevant part:

> **LEGAL REMEDIES**: EXCLUSIVE JURISDICTION FOR DECIDING LEGAL DISPUTES RELATING TO AN ALLEGED BREACH OF WARRANTY OR ANY REPRESENTATIONS, OF ANY NATURE, MUST BE FILED IN THE COURTS WITHIN THE STATE OF MANUFACTURE, WHICH IS INDIANA. THIS LIMITED WARRANTY SHALL BE INREPRETED AND CONSTRUED IN ACCORDANCE WITH AND WITH THE LAWS OF THE STATE OF INDIANA. . . . ALL CLAIMS, CONTROVERSIES, AND CAUSES OF ACTION,

5

>ARISING OUT OF OR RELATING TO THIS LIMITED WARRANTY, SHALL BE GOVERNED BY THE LAWS OF THE STATE OF INDIANA. . . .

(The Warranty at 5). The Registration Entry, which Peck signed, confirms that Plaintiffs read and understood the Warranty and agreed to its terms. (The Registration Entry).

Although Plaintiffs argue that this Court is the proper venue, they have not established the forum-selection clause is unreasonable. With respect to fraud or overreaching, Plaintiffs say that "Defendant's attempt to dismiss this cased based on venue is an unfair or deceptive business attempt to limit or restrict the rights of New Jersey consumers which would be protected under [the New Jersey Fraud Act]." (Pl. Opp'n at 3). They fail, however, to provide any facts whatsoever that substantiate this claim. Plaintiffs also point to the New Jersey Fraud Act and the distance between New Jersey and Indiana as further potential evidence of unreasonableness. (*See id.* at 2–3). But distance between fora does not prove unreasonableness. *See Woodell v. Coach,* 2022 WL 17486262, at *2–3 (D.N.J. Dec. 7, 2022) (concluding that a party failed to establish unreasonableness despite their argument that travel from New Jersey to Michigan presented inconvenience); *see also Heartland Payment Sys., Inc. v. Commer,* 2007 WL 3275097, at *2 (D.N.J. Nov. 5, 2007) (saying that a court should only find a forum-selection clause unenforceable when "the selected forum would be so inconvenient as to deprive the party of his day in court") (citation omitted). Given the high bar that unreasonableness requires, Plaintiffs have not come close to demonstrating that the forum-selection clause is invalid.

As such, because there is a valid forum-selection clause, *Atlantic Marine* requires us to next analyze only public interests. *In re: Howmedica*, 867 F.3d at 402 (quoting *Atlantic Marine*, 571 U.S. at 581–82). The public interest factors to consider are:

>[1] the enforceability of the judgment; [2] practical considerations that could make the trial easy, expeditious, or inexpensive; [3] the relative administrative difficulty in the two fora resulting from court congestion; [4] the local interest in deciding

local controversies at home; [5] the public policies of the fora; and [6] the familiarity of the trial judge with the applicable state law in diversity cases.

*Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879–80 (3d Cir. 1995) (citations omitted).

When analyzing these public interest factors, district courts have the discretion to determine the weight that each factor receives under the circumstances presented. *See id.* at 883 (citing *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 30–31 (1998) ("[§] 1404(a) was intended to vest district courts with broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer."); *see also Lord v. Accenture LLP,* 2021 WL 5980339, at *7 (D.N.J. Dec. 17, 2021) (citing *Kalawa v. United States*, 2020 WL 3603205, at *4 (D.N.J. July 2, 2020)). Of the six *Jumara* factors, factors three, five, and six support transfer, factors one, two, and four are neutral, and zero factors weigh against transfer.[2] As such, we find that the public interest factors support transfer.

Factors three, five, and six support transfer. The third factor supports transfer due to the great congestion this Court currently faces. *See United States District Courts – National Judicial Caseload Profile*, U.S. COURTS, https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0930.2022.pdf (last visited March 2, 2023) (showing 64,678 pending cases in the District of New Jersey as compared to 2,426 pending cases in the Northern District of Indiana as of September 30, 2022). The fifth factor supports transfer because "as a general matter, enforcement of forum selection clauses is not contrary to public policy." *Caspi v. Microsoft Network, L.L.C.*, 323 N.J. Super. 118, 123 (App. Div. 1999). What's more, although Plaintiffs argue that public policy related to the New Jersey Fraud Act indicates that this District is the proper forum, (Pl. Opp'n at 1–2), New Jersey public policy strongly favors the enforcement of

---

[2] Because Jayco presents cogent arguments regarding why these factors weigh in favor of transfer or are neutral, and Plaintiffs do not address these arguments in their opposition brief, we consider any arguments in opposition waived. *See Woodell v. Coach*, 2022 WL 17486262, at *3 (D.N.J. Dec. 7, 2022).

7

forum-selection provisions. *Mancuso v. L'Oreal USA, Inc.*, 2021 WL 365228, at *9 (D.N.J. Feb. 1, 2021). The sixth factor supports transfer because the Northern District of Indiana is more familiar with Indiana state law, which will apply here because of the Warranty's choice-of-law provision. (*See* the Warranty at 5).

Factors one, two, and four are neutral. The first factor is neutral because "it is unlikely that there would be any significant difference in the difficulty of enforcing a judgment rendered by one federal forum or the other[.]" *In re: Howmedica*, 867 F.3d at 410 (quoting 1 James Moore et al., *Moore's Manual: Federal Practice and Procedure*, § 7.81[3][b] (2017)). The second factor is neutral because no "practical considerations, including judicial economy," weigh in favor or against transfer here. *Lord*, 2021 WL 5980339, at *6. Even though "the [relevant] transaction . . . fully occurred within the state of New Jersey," (Pl. Opp'n at 2), "Plaintiffs identify no witness[es] other than themselves . . . that would be inconvenienced" by transfer. (Def. Reply at 2). Further, "[t]he ubiquity of the Zoom platform as a result of the Covid-19 pandemic seemingly refutes any such contentions of litigation inconveniences." (*Id.*). The fourth factor is neutral because, although New Jersey may have an interest in resolving a controversy between its residents, a valid forum-selection clause "should be given controlling weight in all but the most exceptional cases." *Atl. Marine*, 517 U.S. at 63.

Because three factors support transfer, three factors are neutral, and zero factors weigh against transfer, we find that the public interest factors support transfer.

### B.     The Non-Contracting Parties

We now turn to the private and public interests relevant to "the parties who have *not* signed a forum-selection agreement," White Horse and Ford. *In re: Howmedica*, 867 F.3d at 404

8

(quoting *In re Rolls Royce Corp.*, 775 F.3d 671, 681 (5th Cir. 2014)). The private interests we must consider are:

> [1] the "plaintiff's forum preference as manifested in the original choice"; [2] "the defendant's preference"; [3] "whether the claim arose elsewhere"; [4] "the convenience of the parties as indicated by their relative physical and financial condition"; [5] "the convenience of the witnesses"; and [6] "the location of books and records[.]"

*Id.* at 402 (quoting *Jumara*, 55 F.3d at 879). Additionally, private interests include "[7] all other practical problems that make trial of a case easy, expeditious and inexpensive[.]" *Id.* (quoting *Atl. Marine*, 571 U.S. at 62 n.6). As stated above, the Court has the discretion to decide the weight each factor receives in this consideration. *See Jumara*, 55 F.3d at 883; *see also Lord*, 2021 WL 5980339, at *7 (citing *Kalawa*, 2020 WL 3603205, at *4).

Here, of these seven private interest factors, factors one, two, and four support transfer, factors five, six, and seven are neutral, and only factor three weighs against transfer. Thus, we find that the non-contracting parties' private interests support transfer.

Factors one, two, and four support transfer. The first factor supports transfer—despite Plaintiffs' position in its response brief, (*see* Pl. Opp'n at 3)—because the Indiana forum selection clause "is treated as a manifestation of the parties' preferences as to a convenient forum." *Jumara*, 55 F.3d at 880. Plaintiffs cannot now retroactively go back on their word and must bear the consequences of their choices. *See Hewlett-Packard Fin. Servs. Co. v. New Testament Baptist Church,* 2019 WL 3800234, at *5 (D.N.J. Aug. 13, 2019*)* (concluding that a party's contractual agreement to a forum selection clause indicated an original preference for that forum despite expressing a different preference thereafter). The second factor supports transfer because both White Horse and Ford consent to the transfer. (*See* Mot. at 8); (ECF No. 5-1, Ex. C); *see also In re: Howmedica*, 867 F.3d at 408 (agreeing with District Court's analysis that the

9

second factor weighed in favor of transfer when defendants wanted to transfer); *Howmedica Osteonics Corp. v. Sarkisian,* 2016 WL 8677214, at *5 (D.N.J. Aug. 26, 2016).

The fourth factor also supports transfer because the Northern District of Indiana is a more convenient forum for three of the four parties in this matter, as evidenced by Jayco's, White Horse's, and Ford's desires to transfer to the Northern District of Indiana. (*See* Mot. at 8); (*see also* ECF No. 5-1, Ex. C). Additionally, both Jayco's and Ford's principal places of business—Middlebury, Indiana and Detroit, Michigan—are physically closer to the Northern District of Indiana than this Court. (*See* Compl. at ¶¶ 3–4). Although White Horse's principal place is business is in Egg Harbor City, New Jersey, and Plaintiffs are New Jersey residents, these facts, considering the entire factor in context, are insufficient to tilt the scale in favor of New Jersey. (*See id.*).

Factors five, six, and seven are neutral. The fifth factor is neutral because no party identifies "[any] witnesses [that] may be unavailable for trial in one of the fora." *Evans v. Catholic Relief Servs.*, 2019 WL 2417511, at *5 (D.N.J. June 10, 2019) (citing *Jumara*, 55 F.3d at 879); *see also Lord*, 2021 WL 5980339, at *5 (D.N.J. Dec. 17, 2021) (concluding that the fifth factor was neutral when there was "no evidence that any relevant witnesses . . . would be unavailable" in the potential fora). The sixth factor is neutral because "[i]n this age of electronic communication technology, and in the absence of any unusual circumstances compelling the production of unwieldly tomes and hard copy documents, this factor remains neutral." *Evans*, 2019 WL 2417511, at *5; *see also Lord*, 2021 WL 5980339, at *5 (concluding that the sixth factor was neutral when there was "no evidence that any relevant . . . book[ ] or records would be unavailable" in the potential fora). Factor seven is neutral for similar reasons and no party has raised any other potential practical problems with a trial.

Only factor three weighs against transfer. This factor weighs against transfer because New Jersey is "the center of gravity of the dispute, its events and transactions[,]" as the parties entered the relevant contract in New Jersey. *Park Inn Int'l, L.L.C. v. Mody Enters., Inc.*, 105 F. Supp. 2d 370, 377 (D.N.J. 2000). However, because the Court has discretion to weigh factors, the Court accords all factors relatively equal weight. As such, since there are three factors supporting transfer, three neutral factors, and only one factor against, we find the private interest factors support transfer.

The public interests relevant to White Horse and Ford also support transfer. The public interest analysis for these Defendants is the same as for Jayco. As such, they, too, support transfer. Consequently, because all public and private interest analyses favor transfer, we will transfer this case to the Northern District of Indiana, and we need not proceed to Steps Three and Four of the overall analysis. *See In re: Howmedica,* 867 F.3d at 404 ("If, at this juncture, the Step One and Step Two analyses point to the same forum, then the court should allow the case to proceed in that forum, . . . and the transfer inquiry ends there.").

## IV. CONCLUSION

For the reasons set forth above, the Court **GRANTS** Jayco's Motion (ECF No. 5). An appropriate Order follows.

Dated: March 30, 2023                                                           /s/ Robert B. Kugler
                                                                                                ROBERT B. KUGLER
                                                                                                United States District Judge

11